UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:17-cv-1051

CRAIG SCHINDLER, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

v.

WHITING PETROLEUM CORP.,

    Defendant.

---

# COLLECTIVE ACTION COMPLAINT

### I.    SUMMARY

1. Plaintiff Craig Schindler ("Schindler") brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") against Defendant Whiting Petroleum Corporation ("Whiting").

2. Whiting paid Schindler, and other workers like him, the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

3. Schindler brings this collective action to recover unpaid overtime and other damages.

### II.    JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 a significant portion of the facts giving rise to this lawsuit occurred in this District.

6. Whiting maintains several offices, and its headquarters, in this District.

### III. THE PARTIES

7. Schindler worked exclusively for Whiting as a Rig Welder from approximately May 2015 until April 2016. Throughout his employment with Whiting, he was paid the same hourly rate for all hours worked, including those in excess of 40 in a workweek, received no overtime compensation, and was classified as an independent contractor. His consent to be a party plaintiff is attached as Exhibit A.

8. Schindler brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid the same hourly rate for all hours worked, including those in excess of 40 in a workweek, and received no overtime compensation as required by the FLSA.

9. Whiting Petroleum Co. maintains its headquarters and principal place of business in Denver, Colorado. Whiting may be served with process through its registered agent: **The Corporation Company, 7700 E Arapahoe Rd., Suite 220, Centennial, CO 80290**.

### IV. COVERAGE UNDER THE FLSA

10. For at least the past three years, Whiting has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

11. For at least the past three years, Whiting has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

12. For at least the past three years, Whiting has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less

than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

13.     For at least the past three years, Schindler and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## V. FACTS

14.     Whiting is an independent exploration and production company with an oil focused asset base. *See* http://www.whiting.com/.

15.     Whiting operates throughout the United States, including Colorado. *See* http://www.whiting.com/

16.     To provide services to many of its customers, Whiting contracts with certain companies to provide it with personnel to perform the necessary work.

17.     Many of these individuals did work for Whiting as Rig Welders and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work. Specifically, Whiting classified all of its Rig Welders as independent contractors and paid them the same hourly rate for all hours worked, including those in excess of 40 in a workweek, with no overtime compensation.

18.     For example, Schindler worked exclusively for Whiting from approximately March 2015 until April 2016 as a Rig Welder. Throughout his employment with Whiting, he was classified as an independent contractor and paid the same hourly rate for all hours worked, including those in excess of 40 in a workweek, with no overtime compensation.

19.     Thus, rather than receiving time and half as required by the FLSA, Plaintiff only received "straight time" pay for overtime hours worked.

20.     This "straight time for overtime" payment scheme violates the FLSA.

21.     As a Rig Welder, Plaintiff's primary job duties (and the job duties of all other Rig Welders employed by Whiting who were classified as independent contractors and paid straight time)

included reviewing blueprints in creation of welding components, welding pipes using various cutting processes, and maintaining the rig structure. Whiting typically scheduled Schindler to work 12-hour shifts, for as many as 7 days a week. Schindler worked well in excess of 40 hours each week while employed by Whiting.

22. The work Schindler performed was an essential party of Whiting's core business.

23. During Schindler's employment with Whiting while he was classified as an independent contractor, Whiting and/or the company it contracted with exercised control over all aspects of his job. Whiting did not require any substantial investment by Schindler in order for him to perform the work required of him. Whiting determined Schindler's opportunity for profit and loss. Schindler was not required to possess any unique or specialized skillset (other than that maintained by all other Rig Welders) to perform his job duties.

24. Indeed, Whiting and/or the company it contracted with controlled all of the significant or meaningful aspects of the job duties performed by Schindler.

25. Whiting ordered the hours and locations Schindler worked, tools used, and rates of pay received.

26. Even though Schindler often worked away from Whiting's offices without the presence of a direct Whiting supervisor, Whiting still controlled all aspects of Schindler's job activities by enforcing mandatory compliance with Whiting's and/or its client's policies and procedures.

27. No real investment was required of Schindler to perform his job. More often than not, Schindler utilized equipment provided by the client to perform his job duties. Schindler did not provide the equipment he worked with on a daily basis. Whiting and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Schindler worked.

28. Schindler did not incur operating expenses like rent, payroll, marketing, and insurance.

29. Schindler was economically dependent on Whiting during his employment.

30. Whiting set Schindler's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Whiting.

31. Whiting directly determined Schindler's opportunity for profit and loss. Schindler's earning opportunity was based on the number of days he Whiting scheduled him to work.

32. Very little skill, training, or initiative was required of Schindler to perform his job duties.

33. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Whiting and/or the operator Whiting contracted with. Virtually every job function was pre-determined by Whiting and/or the operator Whiting contracted with, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree. The Putative Class Members did not have any supervisory or management duties. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

34. Schindler performed routine manual and technical labor duties that were largely dictated by Whiting and/or its clients.

35. Schindler worked exclusively for Whiting from approximately March 2015 until April 2016 as an independent contractor.

36. Schindler was not employed by Whiting on a project-by-project basis.

37. In fact, while Schindler was classified as an independent contractor, he was regularly on call for Whiting and/or its clients and was expected to drop everything and work whenever needed.

38. All Whiting's Rig Welders perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

39. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for 12 hour shifts for weeks at a time. Instead of paying them overtime, Whiting paid the Putative Class Members hourly plus straight time for each day worked, regardless of the number of hours worked that day (or in that workweek) with no overtime compensation. Whiting denied the Putative Class Members overtime for any and all hours worked in excess of 40 hours in a single workweek.

40. Whiting's policy of failing to pay its independent contractors, including Schindler, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

41. It is undisputed that the contractors are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

42. Because Schindler (and Whiting's other independent contractors) was misclassified as an independent contractor by Whiting, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

43. Whiting's "straight time for overtime" system violates the FLSA because Schindler and the other Rig Welders did not receive any pay for hours worked over 40 hours each week.

## VI. FLSA Violations

44. As set forth herein, Whiting has violated, and is violating, section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

45. Whiting knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Whiting's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

46. Accordingly, Schindler and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

## VII. Collective Action Allegations

47. Whiting's illegal "straight time for overtime" policy extends beyond Plaintiff.

48. It is the "straight time for overtime" payment plan that is the "policy that is alleged to violate the FLSA" in this FLSA collective action. *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (certifying "straight time for overtime" claim for collective treatment).

49. Whiting has paid dozens of hourly workers according to the same unlawful scheme.

50. Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

51. The workers impacted by Whiting's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b). Therefore, the class is properly defined as:

> **All hourly employees of Whiting Petroleum Co. who were, at any point in the past 3 years, paid "straight time for overtime."**

### VIII. CAUSE OF ACTION

52. By failing to pay Plaintiff and those similarly situated to him overtime at one-and-one-half times their regular rates, Whiting violated the FLSA's overtime provisions.

53. Whiting owes Plaintiff and those similarly situated to him the difference between the rate actually paid and the proper overtime rate.

54. Because Whiting knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Whiting owes these wages for at least the past three years.

55. Whiting is liable to Plaintiff and those similarly situated to him for an amount equal to all unpaid overtime wages as liquidated damages.

56. Plaintiff and those similarly situated to him are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### IX. JURY DEMAND

57. Schindler demands a trial by jury.

### X. RELIEF SOUGHT

58. WHEREFORE, Schindler prays for judgment against Whiting as follows:

   (a) For an order allowing this action to proceed as a collective action and directing notice to the class;

(b)        For an order pursuant to section 16(b) of the FLSA finding Whiting liable for unpaid back wages, and an equal amount of liquidated damages, due to Schindler and the class members;

(c)        For an order awarding Schindler and the class members the costs of this action;

(d)        For an order awarding Schindler and the class members their attorneys' fees;

(e)        For an order awarding Schindler and the class members unpaid benefits and compensation in connection with the FLSA and state law violations;

(f)        For an order awarding Schindler and the class members pre- and post-judgment interest at the highest rates allowed by law; and

(g)        For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    State Bar No. 24014780
    **Andrew W. Dunlap**
    State Bar No. 24078444
    **Lindsay R. Itkin**
    State Bar No. 24068647
    **Jessica M. Bresler**
    State Bar No. 24090008
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    litkin@mybackwages.com
    jbresler@mybackwages.com

    AND

    Richard J. (Rex) Burch
    Texas State Bar No. 24001807
    Matthew S. Parmet
    Texas State Bar. 24069719
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com
    mparmet@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFFS**