**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-1051-WJM-NYW

CRAIG SCHINDLER, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

WHITING PETROLEUM CORP.,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

---

Plaintiff Craig Schindler ("Plaintiff") brings this collective action complaint ("Complaint") against Defendant Whiting Petroleum Corp. ("Defendant") to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. (ECF No. 1.) Defendant filed a Motion to Dismiss ("Motion"), alleging that Defendant is not an "employer" for FLSA purposes. (ECF No. 20.) Plaintiff filed a Response to Defendant's Motion to Dismiss ("Response") (ECF No. 26) and Defendant filed a Reply in Support of Motion to Dismiss Collective Action Complaint ("Reply") (ECF No. 29). For the reasons set forth below, Defendant's Motion is denied.

## I.  LEGAL STANDARD

As will become clear below, Defendant's principal argument is that Plaintiff has failed to sufficiently allege that Defendant was Plaintiff's "employer" for FLSA purposes. (*See* ECF No. 20 at 1.) The parties dispute whether FLSA "employer" status is a

jurisdictional element (and therefore subject to challenge under Federal Rule of Civil Procedure 12(b)(1)) or a traditional merits element (and therefore subject to challenge under Rule 12(b)(6)).  The Court need not resolve this jurisdictional/non-jurisdictional dispute, however, because the answer would have no practical effect in this case.

There are three practical consequences of deeming an element "jurisdictional." First, if the Court has any doubt that the element has been satisfied, the Court must raise the issue *sua sponte*—it cannot wait for a party to raise the question, or deem it waived because a party did not timely raise it.  *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) ("It is well settled that a federal court must dismiss a case for lack of subject matter jurisdiction, even should the parties fail to raise the issue.  A court's lack of subject matter jurisdiction cannot be waived by the parties, nor can it be conferred upon the district court by agreement of the parties." (citations omitted)). Here, this is not an issue because Defendant obviously *has* raised a jurisdictional challenge.

Second, a defendant challenging subject matter jurisdiction under Rule 12(b)(1) can introduce evidence beyond the pleadings.  *Davis ex rel. Davis v. United States*, 342 F.3d 1282, 1296 (10th Cir. 2003).  This is in contrast to a Rule 12(b)(6) motion, where defendants are limited, for the most part, to challenging the plaintiff's allegations as stated on the face of the complaint.  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  But this distinction has no relevance here because Defendant has not introduced any evidence beyond the pleadings.  In other words, Defendant has offered only "a facial attack on the complaint's allegations as to subject

matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true," *id*., similar to a Rule 12(b)(6) motion, *see Ridge at Red Hawk*, 493 F.3d at 1177.

Third, in a Rule 12(b)(1) motion, the burden of proof ultimately falls on the Plaintiff to establish subject matter jurisdiction, *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974), rather than requiring the defendant to disprove jurisdiction.  This is potentially in contrast to a Rule 12(b)(6) motion, where the defendant technically has the burden to demonstrate the plaintiff's failure to state a claim—although courts rarely think of Rule 12(b)(6) motions in terms of the respective parties' burdens.  Here, however, Plaintiff's well-pleaded allegations must be accepted as true, *Holt*, 46 F.3d at 1002, so the shifted burden in a Rule 12(b)(1) setting has essentially no effect.

For all of these reasons, the Court finds it immaterial whether "employer" status under the FLSA is a jurisdictional or non-jurisdictional element of Plaintiff's claim.  The question would be the same under either Rule 12(b)(1) or Rule 12(b)(6), *i.e.*, whether the Plaintiff's allegations, taken as true, plausibly suggest that Defendant was Plaintiff's employer for FLSA purposes.

## II.  BACKGROUND

Plaintiff's complaint alleges that he worked "exclusively for Whiting" as a Rig Welder from May 2015 until April 2016.  (ECF No. 1 at 2.)  During this time, he was paid the same hourly rate for all hours worked, including those in excess of 40 hours in a

workweek. (*Id.* at 2.) He was not given any overtime compensation, allegedly in violation of the FLSA. (*Id.*)

Defendant "Whiting is an independent exploration and production company with an oil focused asset base." (*Id.* at 3.) The proposed putative class is made up of individuals who worked as Rig Welders. (*Id.*) While exact job titles and duties differed, these employees were all classified as independent contractors and subjected to the same payment scheme for similar work. (*Id.*) Their primary job duties included receiving blueprints in creation of welding components, welding pipes using various cutting processes, and maintaining the rig structure. (*Id.* at 3–4.) Plaintiff was typically scheduled to work 12-hour shifts, for as many as 7 days a week—Plaintiff worked in excess of 40 hours each week while employed by Whiting. (*Id.* at 4.)

Plaintiff's complaint states that "Whiting and/or the company it contracted with exercised control over all aspects of [Plaintiff's] job." (*Id.*) Plaintiff's daily and weekly activities were routine and "largely governed by standardized plans, procedures, and checklists created by [Defendant] and/or the operator [Defendant] contracted with." (*Id.* at 5.) According to the Complaint, "[v]irtually every job function was pre-determined by [Defendant] and/or the Operator [that Defendant] contracted with, including the tools to use at the job site, the data to compile, the schedule of work, and related work duties." (*Id.*) Defendant also determined Plaintiff's hours, work locations, and rates of pay. (*Id.* at 4.) Although Plaintiff often worked off-site without direct supervision from Defendant, Defendant "still controlled all aspects of [Plaintiff's] job activities by enforcing mandatory compliance with [Defendant's] and/ or its client's policies and procedures." (*Id.*)

Plaintiff did not incur operating expenses like rent, payroll, marketing, or insurance. (*Id.*)  Defendant prohibited Plaintiff from working other jobs for other companies while he was working on jobs for Defendant, and Plaintiff was economically dependant on Defendant during his employment. (*Id.*)  Plaintiff's earning opportunity was based on the number of days Defendant scheduled him to work.  (*Id.*)

Plaintiff argues that he was wrongly classified as an independent contractor and is therefore entitled to overtime compensation for all hours worked in excess of 40 hours in each workweek.  (*Id.* at 6.)  Plaintiff says he was not employed by Defendant on a project-by-project basis.  (*Id.*)  Even while classified as an independent contractor, Plaintiff was regularly on call for Defendant and/or its clients and was expected to be available to work whenever needed.  (*Id.*)

### III. ANALYSIS

Defendant's Motion to Dismiss argues that Plaintiff has not established that Defendant was his employer within the meaning of the FLSA.   (ECF No. 20 at 1.)  Defendant relies on the "economic realities" test (discussed in detail below) to contend that because Plaintiff's Complaint alleges that his activities were controlled by Defendant *and/or Defendant's clients*, some other entity—aside from Defendant—may have been Plaintiff's employer under the FLSA.  (*Id.*)  Plaintiff responds that the factors in the economic realities test are analyzed at the summary judgment stage, not the motion to dismiss stage.  (ECF No. 26 at 7.)  Defendant replies that the economic realities test applies at the motion to dismiss stage to determine whether an entity is an employer under the FLSA.  (*Id.* at 2.)

"[D]istrict courts within the Tenth Circuit, including Colorado, have applied the economic realities test at both the motion to dismiss and summary judgment phase." *Coldwell v. Ritecorp Envtl. Prop. Sols.*, 2017 WL 1737715, at *5 (D. Colo. May 4, 2017). The Court need not categorically declare the propriety of the economic realities test at the motion to dismiss phase because it is satisfied here regardless.

Under the economic realities test, courts will consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Harris v. Universal Contracting, LLC*, 2014 WL 2639363, at *6 (D. Utah June 12, 2014). "No one of the four factors standing alone is dispositive. Instead, the [...] test encompasses the totality of circumstances." *Id.* (brackets and ellipses in original).

Defendant maintains that it does not qualify as an employer under the FLSA based on the economic realities test because in the Complaint, Plaintiff alleges that "[Defendant] **and/or** its clients" exercised control over all aspects of his job. (ECF No. 20 at 3–4 (boldface in original).) Because Plaintiff often worked with Defendant's clients, Defendant argues that: (1) "Plaintiff admits that [Defendant] did not supervise his work," (2) "[Defendant] did not exercise control over Plaintiff[—]another entity did," (3) "[Defendant did not control the equipment or facilities used[—]another entity did," and (4) "Plaintiff is not alleging that Defendant hired or fired him."

The First Circuit considered a similar situation in which the defendant was solely responsible for hiring temporary workers, had the power to refuse to send a worker

back to a job site, supervised and controlled employee work schedules, and decided which workers were to be assigned to particular job sites at client companies. *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 676 (1st Cir. 1998). As in the present case, the defendant in that case argued that it "did not exercise any direct, on-the-job supervision of the workers at the client companies." *Id.* The First Circuit held, "In these circumstances, we do not perceive the absence of direct supervisory oversight of the workers' day-to-day activities to be dispositive." *Id.* The court noted that "although the client companies were solely responsible for on-site supervision of the workers, [defendant] exercised indirect supervisory oversight of the workers through its communications with client companies . . . . Thus, [defendant] retained the authority to intervene if problems arose with a worker's job performance." *Id.* The court further reasoned that "an employer does not need to look over his workers' shoulders every day in order to exercise control. In any event, it is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer." *Id.* The First Circuit "conclude[d] that the absence of direct, on-site supervision does not preclude a determination that [defendants] are the employers of the temporary workers within the broad definition of the FLSA." *Id.*

Plaintiff discussed factors relevant to the economic realities test in his Complaint (ECF No. 1) as follows:

(1) Plaintiff was hired by Defendant. (*Id.* at 3.) Plaintiff explains that "to provide services to many of its customers, [Defendant] contracts with certain companies to provide it with personnel to perform the necessary work." (*Id.*) "Plaintiff worked

exclusively for [Defendant] from approximately March 2015 until April 2016 as a Rig Welder." (*Id.*)  Defendant "prohibited [Plaintiff] from working other jobs for other companies while he was working on jobs for [Defendant]." (*Id.* at 5.)

(2) Defendant supervised and controlled employee work schedules or conditions of employment.  (*Id.*)  "Even though [Plaintiff] often worked away from [Defendant's] offices without the presence of a direct [Defendant] supervisor, [Defendant] still controlled all aspects of [Plaintiff's] job activities by enforcing mandatory compliance with [Defendant's and/or its client's policies and procedures." (*Id.* at 4.)  "Virtually every job function was pre-determined by [Defendant] and/or the operator [Defendant] contracted with, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties." (*Id.* at 5.)  Additionally, "[Defendant] set [Plaintiff's] rates of pay [and] his work schedule." (*Id.*)  "[T]he daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by [Defendant] and/or the operator [Defendant] contracted with." (*Id.*)

(3) Defendant determined the rate and method of payment. (*Id.*)  Plaintiff states that his "earning opportunity was based on the number of days [Defendant] scheduled him to work." (*Id.*)  Defendant set the Plaintiff's rates of pay and paid all of its rig welders according to the same payment scheme. (*Id.* at 3.)

No party makes any direct argument about the fourth factor in the economic realities test, *i.e.*, the sorts of employment records Defendant may have kept.  But "[n]o one of the four factors standing alone is dispositive." *Harris*, 2014 WL 2639363, at *6.

At this phase, the Court finds that Plaintiff's allegations regarding the first three factors are sufficient to plausibly assert, at this pleading phase of the case, that the Defendant was Plaintiff's "employer" within the meaning of the FLSA.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 20) is DENIED.

Dated this 1st day of December, 2017.

BY THE COURT:

_____
William J. Martínez
United States District Judge